UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RECEIVED

OCT 2 2 2015

United State...
For The Federal Circuit

FAIRWARNING IP, LLC,

    Plaintiff,

v.                                          CASE NO. 8:15-cv-100-T-23AEP

CYNERGISTEK, INC.,

    Defendant.

_____/

## ORDER

FairWarning IP, LLC, sues (Doc. 1) CynergisTek, Inc., for infringing United States Patent No. 8,578,500. CynergisTek counterclaims (Doc. 33) for a judgment declaring that the '500 patent is invalid and that CynergisTek did not infringe the '500 patent. CynergisTek moves (Doc. 42) for a judgment on the pleadings.

### A. FairWarning's claims for infringement*

Citing *FairWarning IP, LLC v. Iatric Systems, Inc.*, 2015 WL 3883958 (M.D. Fla. June 24, 2015), CynergisTek argues that "[t]he doctrine of collateral estoppel now precludes FairWarning from asserting the validity of the '500 Patent in this case." (Doc. 42 at 2) *Iatric Systems* dismisses FairWarning's infringement claims against

---

    * Specifically, FairWarning sues CynergisTek for infringement, for contributory infringement, and for active inducement of infringement.

Iatric Systems because the '500 patent is invalid under 35 U.S.C. § 101. As *Pleming v.*

*Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998), explains:

> To claim the benefit of collateral estoppel in the Eleventh Circuit, the
> party relying upon the doctrine must show that: (1) the issue at stake is
> identical to the one involved in the prior proceeding; (2) the issue was
> actually litigated in the prior proceeding; (3) the determination of the
> issue in the prior litigation must have been "a critical and necessary
> part" of the judgment in the first action; and (4) the party against
> whom collateral estoppel is asserted must have had a full and fair
> opportunity to litigate the issue in the prior proceeding.

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971),

holds that, if a previous action invalidated a patent after the patent-holder had a full

and fair opportunity to litigate, collateral estoppel prevents the patent-holder from

enforcing the patent against an unrelated party in another action. *Accord Mendenhall*

*v. Barber-Greene Co.*, 26 F.3d 1573, 1577 (Fed. Cir. 1994) ("[O]nce the claims of a

patent are held invalid in a suit involving one alleged infringer, an unrelated party

who is sued for infringement of those claims may reap the benefit of the invalidity

decision under the principles of collateral estoppel.").

FairWarning argues that "FairWarning lacked a full and fair opportunity to

pursue its claims in the original action." (Doc. 45 at 5) In support, FairWarning

attempts to re-litigate the validity of the '500 patent and to demonstrate that "the

prior case was one of those relatively rare instances where the courts wholly failed to

grasp the technical subject matter and issues in suit." (Doc. 45 at 5 (quoting *Blounder-*

*Tongue*, 402 U.S. at 330)). Specifically, FairWarning challenges the legal conclusions

reached in *Iatric Systems*. However, *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170

- 2 -

F.3d 1373, 1380 (Fed. Cir. 1999), states, "[I]t is clear from the case law that has developed since *Blonder-Tongue* that an inappropriate inquiry is whether the prior finding of [patent] invalidity was correct; instead, the court is only to decide whether the patentee had a full and fair opportunity to litigate the validity of his patent . . . ." A review of *Iatric System* confirms (1) that FairWarning responded (without requesting a hearing) to Iatric Systems's motion to dismiss, which challenged the '500 patent's validity, and (2) that the order dismissing the action both considered and rejected FairWarning's arguments.

Regardless of collateral estoppel, for the same reasons explained in *Iatric Systems*, FairWarning fails to state a claim for infringement of the '500 patent, which is "directed to" nothing more than a patent-ineligible abstract idea. FairWarning asserts neither a fact nor an argument that warrants a different conclusion in this action.

## 2. CynergisTek's counterclaims for a declaratory judgment

Also, CynergisTek counterclaims (Doc. 33) for a judgment declaring that the '500 patent is invalid and that CynergisTek did not infringe the '500 patent. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), grants "any court of the United States" the authority to "declare the rights and other legal relations of any interested party seeking such declaration." As *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962), explains, "The Declaratory Judgment Act was an authorization, not a command." *See also Knights Armament Co. v. Optical Sys. Tech.*, 568 F. Supp. 2d 1369,

- 3 -

1374 (M.D. Fla. 2008) (Conway, J.) ("Under the federal Declaratory Judgment Act, a court maintains broad discretion over whether or not to exercise jurisdiction over claims."). "If a district court determines that a complaint requesting a declaratory judgment will not serve a useful purpose, the court cannot be required to proceed to the merits before dismissing the complaint." *Medmarc Cas. Ins. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011) (Marra, J.).

Because the counterclaims duplicate CynergisTek's fourth and fifth affirmative defenses, the "request[s for] a declaratory judgment will not serve a useful purpose." *Medmarc*, 783 F. Supp. 2d at 1217 ("A number of courts have dismissed counterclaims that contain repetitious issues already before the court by way of the complaint or affirmative defenses."); *see also Dantzler, Inc. v. Hubert Moore Lumber Co.*, 2013 WL 5406440, at *2 (M.D. Ga. Sept. 25, 2013) (Lawson, J.) ("[C]ourts have typically declined to consider counterclaims for declaratory relief that are duplicative of affirmative defenses.").

Accordingly, CynergisTek's motion (Doc. 42) for judgment on the pleadings is **GRANTED IN PART**. CynergisTek's counterclaims for a declaratory judgment are **DISMISSED AS MOOT**. Based on the pleadings and based on *FairWarning IP, LLC v. Iatric Systems, Inc.*, 2015 WL 3883958 (M.D. Fla. June 24, 2015), which invalidates United States Patent No. 8,578,500 under 35 U.S.C. § 101, the clerk is directed (1) to

-4-

enter a judgment in favor of CynergisTek and against FairWarning on FairWarning's

claims, (2) to terminate any pending motion, and (3) to close the case.

ORDERED in Tampa, Florida, on September 14, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE




02 1R
000200 7033
CC 1 15 2015
UNITED STATES POSTAGE
PITNEY BOWES
$ 02.74⁰
MAILED FROM ZIPCODE 33602



TO:

APPEAL, CLOSED

# U.S. District Court
## Middle District of Florida (Tampa)
### CIVIL DOCKET FOR CASE #: 8:15-cv-00100-SDM-AEP

FairWarning IP, LLC v. CynergisTek, Inc.
Assigned to: Judge Steven D. Merryday
Referred to: Magistrate Judge Anthony E. Porcelli
Cause: 35:145 Patent Infringement

Date Filed: 01/16/2015
Date Terminated: 09/15/2015
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**FairWarning IP, LLC**

RECEIVED

OCT 22 2015

United States Court of Appeals
For The Federal Circuit

represented by **Michael S. Hooker**
Phelps Dunbar, LLP
Suite 1900
100 S Ashley Dr
Tampa, FL 33602-5311
813/472-7550
Fax: 813/472-7570
Email: hookerm@phelps.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel Karen Pilloff**
Lowe Hauptman &Ham, LLP
2318 Mill Rd Ste 1400
Alexandria, VA 22314-6878
703-373-4400
Fax: 703-518-5499
Email: rpilloff@ipfirm.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sean Allen Passino**
Hauptman Ham, LLP
2318 Mill Rd Ste 1400
Alexandria, VA 22314-6878
703-535-6525
Fax: 703-518-5499
Email: spassino@ipfirm.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Paul Stearns**
Phelps Dunbar, LLP
Suite 1900
100 S Ashley Dr
Tampa, FL 33602-5311
813/472-7550
Fax: 813/472-7550
Email: stearnsj@phelps.com
*ATTORNEY TO BE NOTICED*

**Lawrence Joseph Dougherty**
Foley &Lardner, LLP
Suite 2700
100 N Tampa St
Tampa, FL 33602
813 229-2300
Fax: 813 225-4210

Email: ldougherty@foley.com
*TERMINATED: 07/02/2015*

**Robert J. Silverman**
Foley &Lardner, LLP
111 Huntington Ave
Boston, MA 02199
617/342-4000
Fax: 617/342-4001
Email: rsilverman@foley.com
*TERMINATED: 07/02/2015*
*PRO HAC VICE*

V.

**Defendant**

**CynergisTek, Inc.**                    represented by **Brandon Scruggs**
Sunstein Kann Murphy &Timbers LLP
125 Summer St
Boston, MA 02110
617-443-9292
Fax: 617-443-0004
Email: bscruggs@sunsteinlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa M. Tittemore**
Sunstein Kann Murphy &Timbers LLP
125 Summer St
Boston, MA 02110
617-443-9292
Email: ltittemore@sunsteinlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sharona H. Sternberg**
Sunstein Kann Murphy &Timbers LLP
125 Summer St
Boston, MA 02110
617-443-9292
Email: ssternberg@sunsteinlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Catherine Fly Yant**
Fee &Jeffries PA
1227 N Franklin St
Tampa, FL 33602-8002
813/229-8008
Email: cyant@feejeffries.com
*ATTORNEY TO BE NOTICED*

**Kathleen M. Wade**
Fee &Jeffries PA
1227 N Franklin St
Tampa, FL 33602-8002
813.229.8008
Fax: 813.229.0046
Email: kwade@feejeffries.com
*ATTORNEY TO BE NOTICED*

**Richard Edson Fee**
Fee &Jeffries PA
1227 N Franklin St
Tampa, FL 33602–8002
813/229–8008
Fax: 813/229–0046
Email: rfee@feejeffries.com
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**CynergisTek, Inc.**                    represented by **Brandon Scruggs**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lisa M. Tittemore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharona H. Sternberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Catherine Fly Yant**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kathleen M. Wade**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Edson Fee**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**FairWarning IP, LLC**                    represented by **Michael S. Hooker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel Karen Pilloff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean Allen Passino**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Paul Stearns**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lawrence Joseph Dougherty**
(See above for address)
*TERMINATED: 07/02/2015*

**Robert J. Silverman**
(See above for address)
*TERMINATED: 07/02/2015*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/16/2015 | 1 | COMPLAINT against CynergisTek, Inc. with Jury Demand (Filing fee $ 400 receipt number TPA–27893) filed by FairWarning IP, LLC. (Attachments: #1 Civil Cover Sheet, #2 Exhibit A)(LSS) (Entered: 01/20/2015) |
| 01/16/2015 | 2 | SUMMONS issued as to CynergisTek, Inc.. (LSS) (Entered: 01/20/2015) |
| 01/16/2015 | 3 | NOTICE of pendency of related cases per Local Rule 1.04(d) by FairWarning IP, LLC. Related case(s): yes (LSS) (Entered: 01/20/2015) |
| 01/16/2015 | 4 | Patent Report sent to Alexandria, VA. (LSS) (Entered: 01/20/2015) |
| 01/21/2015 | 5 | RELATED CASE ORDER AND NOTICE of designation under Local Rule 3.05 – track 2. Notice of pendency of other actions due by 2/4/2015. Signed by Judge Charlene Edwards Honeywell on 1/21/2015. (BGS) (Entered: 01/21/2015) |
| 01/21/2015 | 6 | INTERESTED PERSONS ORDER. Certificate of interested persons and corporate disclosure statement due by 2/4/2015. Signed by Judge Charlene Edwards Honeywell on 1/21/2015. (BGS) (Entered: 01/21/2015) |
| 01/26/2015 | 7 | MOTION for Robert J. Silverman to appear pro hac vice by FairWarning IP, LLC. (Dougherty, Lawrence) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 01/26/2015) |
| 01/26/2015 | 8 | ENDORSED ORDER granting 7 motion to appear pro hac vice. Attorney Robert J. Silverman may appear pro hac vice on behalf of Plaintiff, with Attorney Lawrence J. Dougherty designated as local counsel pursuant to Local Rule 2.02(a). Within twenty–one (21) days of the date of this Order, counsel shall comply with the fee and electronic filing requirements and file a notice of compliance with said requirements. Signed by Magistrate Judge Anthony E. Porcelli on 1/26/2015. (FDM) (Entered: 01/26/2015) |
| 02/04/2015 | 9 | CERTIFICATE of interested persons and corporate disclosure statement re 6 Interested persons order by FairWarning IP, LLC identifying Corporate Parent FairWarning Technologies, Inc., Other Affiliate Lawrence J. Dougherty, Other Affiliate Foley &Lardner LLP, Other Affiliate Iatric Systems, Inc., Other Affiliate Kurt A. Long, Other Affiliate Lowe Hauptman &Ham, LLP, Other Affiliate Sean A. Passino, Other Affiliate Rachel K. Pilloff, Other Affiliate Robert J. Silverman, Other Affiliate Thomas I. Elkind for FairWarning IP, LLC.. (Dougherty, Lawrence) (Entered: 02/04/2015) |
| 02/04/2015 | 10 | DOCUMENT TERMINATED counsel notified to refile using the correct event code. PROOF of service by FairWarning IP, LLC (Dougherty, Lawrence) Modified on 2/5/2015 (EJC). (Entered: 02/04/2015) |
| 02/05/2015 | | (Court only) ***Deadlines terminated. Notice of Pendency Deadline set for 2/4/15 cancelled. (EJC) (Entered: 02/05/2015) |
| 02/05/2015 | 11 | RETURN of service executed on 1/21/2015 by FairWarning IP, LLC as to CynergisTek, Inc.. (Dougherty, Lawrence) (Entered: 02/05/2015) |
| 02/09/2015 | 12 | MOTION for Sean A. Passino to appear pro hac vice by FairWarning IP, LLC. (Dougherty, Lawrence) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 02/09/2015) |
| 02/09/2015 | 13 | MOTION for Rachel K. Pilloff to appear pro hac vice by FairWarning IP, LLC. (Dougherty, Lawrence) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 02/09/2015) |
| 02/09/2015 | 14 | ENDORSED ORDER granting 12 motion to appear pro hac vice; granting 13 motion to appear pro hac vice. Attorneys Sean A. Passino and Rachel K. Pilloff may appear pro hac vice on behalf of Plaintiff, with Attorney Lawrence J. |

| | | |
|---|---|---|
| | | Dougherty designated as local counsel pursuant to Local Rule 2.02(a). Within twenty–one (21) days of the date of this Order, counsel shall comply with the fee and electronic filing requirements and file a notice of compliance with said requirements. Signed by Magistrate Judge Anthony E. Porcelli on 2/9/2015. (FDM) (Entered: 02/09/2015) |
| 02/09/2015 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Sean Allen Passino, appearing on behalf of FairWarning IP, LLC (Filing fee $150 receipt number TPA028265.) Related document: 12 MOTION for Sean A. Passino to appear pro hac vice. (AG) (Entered: 02/09/2015) |
| 02/09/2015 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Rachel Karen Pilloff, appearing on behalf of FairWarning IP, LLC (Filing fee $150 receipt number TPA028265.) Related document: 13 MOTION for Rachel K. Pilloff to appear pro hac vice. (AG) (Entered: 02/09/2015) |
| 02/09/2015 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Robert J. Silverman, appearing on behalf of FairWarning IP, LLC (Filing fee $150 receipt number TPA028265.) Related document: 7 MOTION for Robert J. Silverman to appear pro hac vice. (AG) (Entered: 02/09/2015) |
| 02/10/2015 | | (Court only) ***Attorney Sean Allen Passino for FairWarning IP, LLC added. (EJC) (Entered: 02/10/2015) |
| 02/10/2015 | | (Court only) ***Attorney Rachel Karen Pilloff for FairWarning IP, LLC added. (EJC) (Entered: 02/10/2015) |
| 02/10/2015 | | (Court only) ***Staff notes NEF regenerated re 14 Endorsed Order notifying Attorney's Sean A. Passino and Rachel K. Pilloff that they have been admitted pro hac vice. (EJC) (Entered: 02/10/2015) |
| 02/11/2015 | 15 | Unopposed MOTION for Extension of Time to File Response to Complaint by CynergisTek, Inc.. (Fee, Richard) (Entered: 02/11/2015) |
| 02/12/2015 | 16 | NOTICE of compliance re 8 Order on motion to appear pro hac vice by FairWarning IP, LLC (Silverman, Robert) (Entered: 02/12/2015) |
| 02/12/2015 | 17 | ENDORSED ORDER granting 15 Unopposed Motion for Enlargement of Time to Serve Response to Complaint. Defendant CynergisTek, Inc., shall respond to the complaint on or before March 13, 2015. Signed by Judge Charlene Edwards Honeywell on 2/12/2015. (BGS) (Entered: 02/12/2015) |
| 02/12/2015 | | (Court only) ***Set/reset deadlines Answer due by 3/13/2015. (EJC) (Entered: 02/12/2015) |
| 02/17/2015 | 18 | NOTICE of compliance re 3 Notice of pendency of related cases, 5 Related case order and track 2 notice by FairWarning IP, LLC (Dougherty, Lawrence) (Entered: 02/17/2015) |
| 02/18/2015 | 19 | NOTICE of compliance by FairWarning IP, LLC (Pilloff, Rachel) (Entered: 02/18/2015) |
| 02/18/2015 | 20 | NOTICE of compliance by FairWarning IP, LLC (Passino, Sean) (Entered: 02/18/2015) |
| 03/13/2015 | | (Court only) ***Deadlines terminated. Answer Due Deadline set for 3/13/15 cancelled. (EJC) (Entered: 03/13/2015) |
| 03/13/2015 | 21 | DOCUMENT TERMINATED counsel notified to refile using the correct event code. Unopposed MOTION for Extension of Time to File Response to Plaintiff's Complaint by CynergisTek, Inc.. (Wade, Kathleen) Modified on 3/16/2015 (EJC). (Entered: 03/13/2015) |
| 03/13/2015 | 22 | Unopposed MOTION for Lisa M. Tittemore to appear pro hac vice by CynergisTek, Inc.. (Wade, Kathleen) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 03/13/2015) |

| 03/13/2015 | 23 | Unopposed MOTION for Brandon Scruggs to appear pro hac vice by CynergisTek, Inc.. (Wade, Kathleen) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 03/13/2015) |
| 03/13/2015 | 24 | Unopposed MOTION for Sharona H. Sternberg to appear pro hac vice by CynergisTek, Inc.. (Wade, Kathleen) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 03/13/2015) |
| 03/16/2015 | | (Court only) ***Deadlines terminated. Answer deadline cancelled. (JNB) (Entered: 03/16/2015) |
| 03/16/2015 | 25 | ENDORSED ORDER granting 22 motion to appear pro hac vice; granting 23 motion to appear pro hac vice; granting 24 motion to appear pro hac vice. Attorneys Lisa M. Tittemore, Brandon Scruggs, and Sharona H. Sternberg, may appear pro hac vice on behalf of Defendant, with Attorneys Richard E. Fee and Kathleen M. Wade designated as local counsel pursuant to Local Rule 2.02(a). Within twenty–one (21) days of the date of this Order, counsel shall comply with the fee and electronic filing requirements and file a notice of compliance with said requirements. Signed by Magistrate Judge Anthony E. Porcelli on 3/16/2015. (FDM) (Entered: 03/16/2015) |
| 03/16/2015 | | (Court only) ***Motions terminated: 21 Unopposed MOTION for Extension of Time to File Response to Plaintiff's Complaint filed by CynergisTek, Inc.. (EJC) (Entered: 03/16/2015) |
| 03/16/2015 | | (Court only) ***Attorney Lisa M. Tittemore for CynergisTek, Inc. added. (EJC) (Entered: 03/16/2015) |
| 03/16/2015 | | (Court only) ***Attorney Brandon Scruggs for CynergisTek, Inc. added. (EJC) (Entered: 03/16/2015) |
| 03/16/2015 | | (Court only) ***Attorney Sharona H. Sternberg for CynergisTek, Inc. added. (EJC) (Entered: 03/16/2015) |
| 03/16/2015 | | (Court only) ***COPIES mailed to Counsel: Lisa M. Tittemore, Brandon Scruggs, Sharona H. Sternberg re 25 Order on motion to appear pro hac vice (EJC) (Entered: 03/16/2015) |
| 03/17/2015 | 26 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint *[re–filed to correct CM/ECF classification]* by CynergisTek, Inc.. (Wade, Kathleen) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 03/17/2015) |
| 03/17/2015 | 27 | ENDORSED ORDER granting 26 Motion for Extension of Time to Answer or respond. Deadline for Defendant CynergisTek to respond to the Complaint is extended up to and through April 13, 2015. Signed by Magistrate Judge Anthony E. Porcelli on 3/17/2015. (FDM) (Entered: 03/17/2015) |
| 03/17/2015 | 28 | ORDER: This case is hereby TRANSFERRED to United States District Judge Steven D. Merryday, Tampa Division, for all further proceedings. The Clerk is hereby directed to transfer this case to District Judge Steven D. Merryday, Tampa Division. Signed by Judge Charlene Edwards Honeywell on 3/17/2015. (BGS) (Entered: 03/17/2015) |
| 03/18/2015 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Brandon Scruggs, appearing on behalf of CynergisTek, Inc. (Filing fee $150 receipt number TPA029054.) Related document: 23 Unopposed MOTION for Brandon Scruggs to appear pro hac vice. (AG) (Entered: 03/18/2015) |
| 03/18/2015 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Sharona H. Sternberg, appearing on behalf of CynergisTek, Inc. (Filing fee $150 receipt number TPA029054.) Related document: 24 Unopposed MOTION for Sharona H. Sternberg to appear pro hac vice. (AG) (Entered: 03/18/2015) |
| 03/18/2015 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Lisa M. Tittemore, appearing on behalf of CynergisTek, Inc. (Filing fee $150 receipt number TPA029054.) Related document: 22 Unopposed MOTION for Lisa M. Tittemore to appear pro hac vice. (AG) (Entered: |

| | | 03/18/2015) |
|---|---|---|
| 03/18/2015 | 29 | Case Reassigned to Judge Steven D. Merryday. New case number: 8:15–cv–100–T–23AEP. Judge Charlene Edwards Honeywell no longer assigned to the case. (EJC) (Entered: 03/18/2015) |
| 03/18/2015 | | (Court only) ***COPIES mailed to Counsel: Sharona H. Sternberg re 29 Case Assigned/Reassigned, 27 Order on motion for extension of time to answer, 28 Order (EJC) (Entered: 03/18/2015) |
| 03/18/2015 | | (Court only) ***Set/reset deadlines Answer due by 4/13/2015. (EJC) (Entered: 03/18/2015) |
| 03/24/2015 | 30 | NOTICE of compliance re 25 Order on motion to appear pro hac vice by CynergisTek, Inc. (Sternberg, Sharona) (Entered: 03/24/2015) |
| 03/24/2015 | 31 | NOTICE of compliance re 25 Order on motion to appear pro hac vice by CynergisTek, Inc. (Scruggs, Brandon) (Entered: 03/24/2015) |
| 03/24/2015 | 32 | NOTICE of compliance re 25 Order on motion to appear pro hac vice by CynergisTek, Inc. (Tittemore, Lisa) (Entered: 03/24/2015) |
| 04/07/2015 | | (Court only) ***Deadlines terminated. Past due deadline cancelled. (JNB) (Entered: 04/07/2015) |
| 04/13/2015 | 33 | ANSWER and affirmative defenses to 1 Complaint with Jury Demand , COUNTERCLAIM against FairWarning IP, LLC by CynergisTek, Inc..(Fee, Richard) (Entered: 04/13/2015) |
| 04/14/2015 | | (Court only) ***Deadlines terminated. Answer deadline cancelled. (JNB) (Entered: 04/14/2015) |
| 04/16/2015 | 34 | **ORDER directing FairWarning IP, LLC to file a Case Management Report by 4/29/2015. Signed by Judge Steven D. Merryday on 4/16/2015. (LAM) (Entered: 04/16/2015)** |
| 04/17/2015 | 35 | Unopposed MOTION to Consolidate Cases by CynergisTek, Inc.. (Fee, Richard) (Entered: 04/17/2015) |
| 04/22/2015 | 36 | **ENDORSED ORDER denying 35 the motion to consolidate. Signed by Judge Steven D. Merryday on 4/22/2015. (Entered: 04/22/2015)** |
| 04/27/2015 | 37 | CASE MANAGEMENT REPORT. (Attachments: # 1 Exhibit Exhibit A)(Dougherty, Lawrence) (Entered: 04/27/2015) |
| 04/30/2015 | | (Court only) ***Deadlines terminated. Past due deadlines cancelled. (JNB) (Entered: 04/30/2015) |
| 05/07/2015 | 38 | Answer and Affirmative Defenses REPLY to 33 Counterclaim by FairWarning IP, LLC. Related document: 33 Answer to ComplaintCounterclaim filed by CynergisTek, Inc..(Dougherty, Lawrence) (Entered: 05/07/2015) |
| 06/24/2015 | 39 | NOTICE of Appearance by Catherine Fly Yant on behalf of CynergisTek, Inc. (Yant, Catherine) (Entered: 06/24/2015) |
| 06/24/2015 | 40 | NOTICE of Appearance by Michael S. Hooker on behalf of FairWarning IP, LLC (Hooker, Michael) (Entered: 06/24/2015) |
| 06/24/2015 | 41 | NOTICE of Appearance by Jason Paul Stearns on behalf of FairWarning IP, LLC (Stearns, Jason) (Entered: 06/24/2015) |
| 06/29/2015 | 42 | MOTION for judgment on the pleadings *and Incorporated Memorandum of Law* by CynergisTek, Inc.. (Fee, Richard) (Entered: 06/29/2015) |
| 06/30/2015 | 43 | Unopposed MOTION for Lawrence J. Dougherty, Robert J. Silverman, and Thomas I. Elkind to withdraw as attorney by FairWarning IP, LLC. (Dougherty, Lawrence) (Entered: 06/30/2015) |
| 07/01/2015 | | (Court only) *** 43 Unopposed MOTION for Lawrence J. Dougherty, Robert J. Silverman, and Thomas I. Elkind to withdraw as attorney REFERRED to |

| | | |
|---|---|---|
| | | Magistrate Judge Anthony E. Porcelli. (AMD) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 07/01/2015) |
| 07/02/2015 | 44 | **ENDORSED ORDER granting 43 Motion to Withdraw and Substitute. Attorney Lawrence Joseph Dougherty and Attorney Robert J. Silverman terminated. Signed by Magistrate Judge Anthony E. Porcelli on 7/2/2015. (FDM) (Entered: 07/02/2015)** |
| 07/16/2015 | 45 | RESPONSE in Opposition re 42 MOTION for judgment on the pleadings *and Incorporated Memorandum of Law* filed by FairWarning IP, LLC. (Attachments: # 1 Affidavit Declaration in Support of Response in Opposition to Motion for Judgment on the Pleadings, # 2 Exhibit 1 − Complaint, # 3 Exhibit 2 − Amended Complaint, # 4 Exhibit 3 − Iatric Dispositive Motion to Dismiss, # 5 Exhibit 4 − FW Response in Opposition to Iatric Motion to Dismiss, # 6 Exhibit 5 − Declaration of Kurt J. Long, # 7 Exhibit 6 − Declaration of Lawrence J. Dougherty, # 8 Exhibit 7 − Order)(Stearns, Jason) (Entered: 07/16/2015) |
| 08/27/2015 | 46 | Unopposed MOTION to stay *Case Deadlines Pending Resolution of Defendant's Dispositive Motion* by CynergisTek, Inc.. (Fee, Richard) (Entered: 08/27/2015) |
| 09/14/2015 | 47 | **ORDER granting in part 42 —motion for judgment on the pleadings; dismissing as moot CynergisTek's counterclaims for a declaratory judgment; directing the Clerk to ENTER JUDGMENT for CynergisTek and against FairWarning on Fair Warning's claims, to TERMINATE any pending motion, and to CLOSE the case. Signed by Judge Steven D. Merryday on 9/14/2015. (BK) (Entered: 09/14/2015)** |
| 09/15/2015 | 48 | **CLERK'S JUDGMENT in favor of CynergisTek, Inc. against FairWarning IP, LLC Signed by Deputy Clerk on 9/15/2015. CASE CLOSED.(EJC) (Entered: 09/15/2015)** |
| 09/15/2015 | 49 | Patent Report sent to Alexandria, VA. (EJC) (Entered: 09/15/2015) |
| 10/13/2015 | 50 | NOTICE OF APPEAL as to 48 Clerk's Judgment by FairWarning IP, LLC, re 47 Order. Filing fee not paid. (Hooker, Michael) Modified on 10/14/2015 (EJC). (Entered: 10/13/2015) |
| 10/13/2015 | 51 | TRANSCRIPT information form filed by FairWarning IP, LLC re 50 Notice of appeal. (Attachments: # 1 Exhibit A, U.S. Court of Appeals, Federal Circuit Form 22)(Hooker, Michael) (Entered: 10/13/2015) |
| 10/14/2015 | 52 | NOTICE of change of address by Sean Allen Passino (Passino, Sean) (Entered: 10/14/2015) |





**TO:**

<div align="center">

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

</div>

**RECEIVED**

OCT 2 2 2015

United States Court of Appeals
For The Federal Circuit

| | | |
|---|---|---|
| FairWarning IP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:15-cv- |
| | ) | |
| CynergisTek, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<div align="center">

**COMPLAINT FOR PATENT INFRINGEMENT**
**AND DEMAND FOR JURY TRIAL**

</div>

Plaintiff FairWarning IP, LLC alleges as follows for its complaint against Defendant CynergisTek, Inc. ("CynergisTek").

<div align="center">

**NATURE OF THE ACTION**

</div>

1.    FairWarning IP, LLC alleges that CynergisTek has infringed and continues to infringe one or more claims of United States Patent No. 8,578,500 ("the '500 Patent" or "Patent-in-Suit"), entitled "System and Method of Fraud and Misuse Detection."  This is a civil action for the patent infringement of the '500 Patent, including the willful infringement of the '500 Patent by CynergisTek.

2.    The technology at issue involves a system and method for detecting fraud and/or misuse of data in a computer environment.

## PARTIES

3.    FairWarning IP, LLC is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 13535 Feather Sound Drive, Suite 600, Clearwater, Florida 33762, within this judicial district.

4.    On information and belief, CynergisTek is a Texas corporation with its principal place of business at 11410 Jollyville Road, Suite 2201, Austin, TX 78759.

## STATEMENT OF JURISDICTION

5.    FairWarning IP, LLC is a corporation incorporated under the laws of the State of Florida with its principal place of business in the State of Florida, within this judicial district.

6.    CynergisTek is a corporation incorporated under the laws of the State of Texas with its principal place of business in the State of Texas.

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).   Venue is proper in this district pursuant to 28 U.S.C. §§1391 and 1400(b).

8.    This action arises under federal statute, 35 U.S.C. § 100 *et seq.*, including §§ 271, 281, 283, 284 and 285, which are intended to redress infringement of the '500 Patent.

2

## BACKGROUND

9.    FairWarning IP, LLC holds full power and authority to bring and prosecute lawsuits against third parties for infringement of the '500 Patent.

10.    CynergisTek at least uses, causes to be used, makes, imports, causes to be imported, offers for sale, causes to be offered for sale, sells, and/or causes to be sold in the United States and in this judicial district a product or service that incorporates the technology claimed in the '500 Patent.

11.    CynergisTek offers for sale a software product to customers thereby inducing customers to use the software product in the United States and in this judicial district.

12.    CynergisTek actively sells, offers to sell, advertises and solicits business from customers and distributors located in the United States.

13.    Since the issuance of the '500 Patent, CynergisTek has been selling at least one software product or service (and having particular features and/or functions) under the trademark "Security Audit Manager™" or "SAM™" (hereinafter "software product").

## THE PATENT-IN-SUIT

14.    The '500 Patent was duly and legally issued by the United States Patent and Trademark Office on November 5, 2013.  The '500 Patent issued to sole

3

inventor Kurt J Long, who has assigned his rights in the '500 Patent to FairWarning IP, LLC.

15.    FairWarning IP, LLC possesses the right to sue and to recover for infringement of the '500 Patent during which time CynergisTek's infringing acts occurred and continue to occur.   A copy of the '500 Patent is attached as Exhibit A.

## COUNT I

## DIRECT INFRINGEMENT OF THE '500 PATENT

16.    FairWarning IP, LLC realleges and incorporates by reference as if fully set forth herein allegations contained in paragraph 1 through 15.

17.    CynergisTek has transacted and continues to transact business in the United States and in this judicial district and division by: using or causing to be used; making; offering to sell or causing to be offered for sale; and/or selling or causing to be sold directly, through intermediaries and/or as an intermediary, the software product that infringes (literally or by equivalents) the '500 Patent to customers in the United States, including customers in this judicial district and division, and CynergisTek will continue to do so unless enjoined by this Court.

18.    CynergisTek has infringed and is still infringing the '500 patent by making, selling, and/or using systems and methodology that embody the patented invention, and CynergisTek will continue to do so unless enjoined by this Court.

4

19. On information and belief, CynergisTek previously became aware of the '500 Patent.

20. The FairWarning IP, LLC has complied with the statutory requirement (35 U.S.C. § 287) of placing a notice of the '500 Patent on all systems and methods it manufactures and sells and has also given CynergisTek written notice of the infringement.

21. For at least some period of time, CynergisTek has known that the software product infringes certain claims of the '500 Patent.

22. CynergisTek's actions constitute direct patent infringement under 35 U.S.C. § 271(a).

23. CynergisTek's infringement of the '500 Patent will continue unless enjoined by this Court.

24. CynergisTek's direct infringement has been intentional, willful, and with a reckless disregard for the rights of FairWarning IP, LLC.

25. CynergisTek has caused FairWarning IP, LLC injury, including lost profits, for which FairWarning IP, LLC is entitled to damages adequate to compensate them for direct infringement.

26. CynergisTek's direct infringement warrants the assessment of increased damages pursuant to 35 U.S.C. § 284, and an award of attorneys' fees pursuant to 35 U.S.C. § 285.

5

## COUNT II

## CONTRIBUTORY INFRINGEMENT OF THE '500 PATENT

27.    FairWarning IP, LLC realleges and incorporates by reference as if fully set forth herein allegations contained in paragraph 1 through 26.

28.    The software product is especially made, or especially adapted, for use that infringes certain claims of the '500 Patent, such that CynergisTek's customers and/or users of the software product infringe such claims of the '500 Patent (literally or by equivalents).

29.    The software product has no substantial non-infringing use.

30.    CynergisTek's actions constitute contributory patent infringement under 35 U.S.C. §271(c).

31.    CynergisTek's contributory infringement of the '500 Patent will continue unless enjoined by this Court.

32.    CynergisTek's contributory infringement has been intentional, willful, and with a reckless disregard for the rights of FairWarning IP, LLC.

33.    CynergisTek has caused FairWarning IP, LLC injury, including lost profits, for which FairWarning IP, LLC is entitled to damages adequate to compensate them for contributory infringement.

34. CynergisTek's contributory infringement warrants the assessment of increased damages pursuant to 35 U.S.C. § 284, and an award of attorneys' fees pursuant to 35 U.S.C. § 285.

<div align="center">

## COUNT III

**ACTIVE INDUCEMENT OF INFRINGEMENT OF THE '500 PATENT**

</div>

35. FairWarning IP, LLC realleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 34.

36. Third party customers and/or users of the software product are directly infringing certain claims of the '500 Patent (literally or by equivalents).

37. By advertising, offering for sale, providing instructions, selling and supporting the software product, CynergisTek has knowingly and intentionally caused third party users of the software product to infringe certain claims of the '500 Patent.

38. CynergisTek has continued to advertise, offer for sale, sell, instruct others and support the software product with the intent to induce third party users to infringe the '500 Patent.

39. CynergisTek's actions constitute active inducement of patent infringement under 35 U.S.C. § 271(b).

40. CynergisTek's active inducement of infringement of the '500 Patent will continue unless enjoined by this Court.

7

41.    CynergisTek's active inducement of infringement has been intentional, willful, and with a reckless disregard for the rights of FairWarning IP, LLC.

42.    CynergisTek has caused FairWarning IP, LLC injury, including lost profits, for which FairWarning IP, LLC is entitled to damages adequate to compensate them for direct infringement.

43.    CynergisTek's active inducement of infringement warrants the assessment of increased damages pursuant to 35 U.S.C. § 284, and an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, FairWarning IP, LLC prays for judgment and seeks relief against CynergisTek as follows:

A.    An adjudication that one or more claims of the Patent-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by CynergisTek and/or by CynergisTek in conjunction with its customers and/or users or others;

B.    An adjudication that CynergisTek has contributed to infringement of one or more claims of the Patent-in-Suit;

C.    An adjudication that CynergisTek has induced infringement of one or more claims of the Patent-in-Suit;

8

D.    An award to FairWarning IP, LLC for damages adequate to compensate FairWarning IP, LLC for CynergisTek's acts of infringement together with prejudgment interest pursuant to 35 U.S.C. § 284;

E.    That, should CynergisTek's acts of infringement be found to be willful from the time that CynergisTek became aware of the infringing nature of its actions, the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

F.    A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining CynergisTek from further acts of infringement with respect to the claims of the Patent-in-Suit;

G.    That this Court declare this to be an exceptional case and award FairWarning IP, LLC its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285;

H.    An accounting for damages;

I.    Interests and costs; and

J.    Any further relief that this Court deems just and proper.

## JURY DEMAND

FairWarning, IP, LLC demands a trial by jury on all the issues so triable.

9

Date: January 16, 2015          /s/ Lawrence J. Dougherty
                                Lawrence J. Dougherty
                                (FBN 68637)
                                FOLEY & LARDNER LLP
                                100 North Tampa Street, Suite 2700
                                Tampa, Florida 33602
                                Telephone: 813.229.2300
                                Facsimile: 813.221.4210
                                Primary email: ldougherty@foley.com

                                Robert J. Silverman
                                (*pro hac vice motion forthcoming*)
                                FOLEY & LARDNER LLP
                                111 Huntington Avenue, Suite 2500
                                Boston, Massachusetts 02199-7610
                                Telephone:   617.342.4019
                                Facsimile: 617.342.4001
                                Primary email:   rsilverman@foley.com

                                *Attorneys for the Plaintiff*
                                *FairWarning IP, LLC*

10

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| FAIRWARNING IP, LLC | CYNERGISTEK, INC. |

**(b)** County of Residence of First Listed Plaintiff    Pinellas County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Travis County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Foley & Lardner LLP
100 North Tampa Street, Suite 2700
Tampa, FL 33602; Tel: 813-229-2300

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1   U.S. Government    Plaintiff | ☒ 3   Federal Question     *(U.S. Government Not a Party)* |
| ☐ 2   U.S. Government    Defendant | ☐ 4   Diversity     *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☒ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
35 U.S.C. § 100 et seq. including §§ 271, 281, 283, 284 and 285

Brief description of cause:
Patent infringement

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* JUDGE Hon. Steven Merryday/ Hon. Mark Pizzo | DOCKET NUMBER 8:14-cv-2685-T-23-MAP |
|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 01/16/2015 | |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

# EXHIBIT A

US008578500B2

## (12) United States Patent
### Long

(10) Patent No.: **US 8,578,500 B2**
(45) Date of Patent: **Nov. 5, 2013**

(54) **SYSTEM AND METHOD OF FRAUD AND MISUSE DETECTION**

(76) Inventor: Kurt James Long, St. Petersburg, FL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 734 days.

(21) Appl. No.: 11/687,864

(22) Filed: Mar. 19, 2007

(65) **Prior Publication Data**

US 2007/0220604 A1   Sep. 20, 2007

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 11/420,645, filed on May 26, 2006.

(60) Provisional application No. 60/685,655, filed on May 31, 2005.

(51) **Int. Cl.**
*G06F 21/00*   (2013.01)

(52) **U.S. Cl.**
USPC ................................. 726/26; 726/22

(58) **Field of Classification Search**
USPC ........................................ 726/22, 26
See application file for complete search history.

(56) **References Cited**

**U.S. PATENT DOCUMENTS**

| | | |
|---|---|---|
| 5,557,742 A | 9/1996 | Smaha et al. |
| 6,347,374 B1 | 2/2002 | Drake et al. |
| 6,405,318 B1 | 6/2002 | Rowland |
| 6,549,208 B2 | 4/2003 | Maloney et al. |
| 6,789,202 B1 | 9/2004 | Ko et al. |
| 2003/0229519 A1 * | 12/2003 | Eidex et al. .................. 705/2 |

| | | | |
|---|---|---|---|
| 2004/0260945 A1 | 12/2004 | Raikar et al. | |
| 2005/0027848 A1 * | 2/2005 | Kamenetsky et al. | 709/223 |
| 2006/0282660 A1 * | 12/2006 | Varghese et al. | 713/155 |
| 2007/0039049 A1 | 2/2007 | Kupferman et al. | |

FOREIGN PATENT DOCUMENTS

EP   1054529 A2   11/2000

OTHER PUBLICATIONS

"Security Management" eTrust® Audit. 2006. http://www3.ca.com/solutions/Product.aspx?ID=157.
Denning D E: "An Intrusion-Detection Model," IEEE Transactions on Software Engineering, IEEE Service Center, Los Alamitos, CA, vol. SE-13, No. 2, (Feb. 1, 1987)<pp. 222-232.
Debar et al.: "Towards a taxonomy of intrusion-detection systems," Computer Networks, Elsevier Science Publishers B.V., Amsterdam, NL, vol. 31, No. 8, (Apr. 23, 1999), pp. 805-822.
European Search Report for 08 743 964.2 dated May 9, 2011.

* cited by examiner

*Primary Examiner* — Lisa Lewis
(74) *Attorney, Agent, or Firm* — Lowe Hauptman Ham & Berner, LLP

(57) **ABSTRACT**

A system and method are provided for detecting fraud and/or misuse of data in a computer environment through generating a rule for monitoring at least one of transactions and activities that are associated with the data. The rule can be generated based on one or more criteria related to the at least one of the transactions and the activities that is indicative of fraud or misuse of the data. The rule can be applied to the at least one of the transactions and the activities to determine if an event has occurred, where the event occurs if the at least one criteria has been met. A hit is stored if the event has occurred and a notification can be provided if the event has occurred. A compilation of hits related to the rule can be provided.

**17 Claims, 10 Drawing Sheets**



**U.S. Patent**      Nov. 5, 2013      Sheet 1 of 10      US 8,578,500 B2

## Figure 1A



## Figure 1B



## Figure 2



# Figure 3



```
<?xml version="1.0" encoding="UTF-8" ?>
<LogFormatDefinition definitionName="SharePoint" compatibleWith="web">
  <event numLines="1">
    <timeStampFields>
      <numTSFields>2</numTSFields>
      <concatWith />
      <formatString>yyyy-mm-ddHH:mm:ss</formatString>
      <tsField>date</tsField>
      <tsField>time</tsField>
    </timeStampFields>
    <parseRules>
      <!-- rules for parsing whole lines of data like ignore rules -->
      <rule ruleType="ignore" constraint="startsWith">
      <!-- constraint values: startsWith, endsWith, contains -->
        <searchString text="comment line">#</searchString>
      <!-- ignore lines that start with # because they are comment lines -->
      </rule>
    </parseRules>
    <field fieldName="date" parseType="delimited">
    <!-- parseType values: delimited, bounded, indexed -->
      <delimiter />
      <delimitedIndex>0</delimitedIndex>
    </field>
    <field fieldName="time" parseType="delimited">
      <delimiter />
      <delimitedIndex>1</delimitedIndex>
    </field>
    <field fieldName="serverip" parseType="delimited">
      <delimiter />
      <delimitedIndex>2</delimitedIndex>
    </field>
    <field fieldName="method" parseType="delimited">
      <delimiter />
      <delimitedIndex>3</delimitedIndex>
    </field>
    <field fieldName="uri" parseType="delimited">
      <delimiter />
      <delimitedIndex>4</delimitedIndex>
    </field>
    <field fieldName="query" parseType="delimited">
      <delimiter />
      <delimitedIndex>5</delimitedIndex>
    </field>
    <field fieldName="username" parseType="delimited">
      <delimiter />
      <delimitedIndex>7</delimitedIndex>
    </field>
    <field fieldName="clientip" parseType="delimited">
      <delimiter />
      <delimitedIndex>8</delimitedIndex>
    </field>
    <field fieldName="httpstatus" parseType="delimited">
      <delimiter />
      <delimitedIndex>10</delimitedIndex>
    </field>
    <field fieldName="s-port" parseType="delimited">
      <delimiter />
      <delimitedIndex>6</delimitedIndex>
    </field>
    <field fieldName="cs(User-Agent)" parseType="delimited">
      <delimiter />
      <delimitedIndex>9</delimitedIndex>
    </field>
  </event>
</LogFormatDefinition>
```

301

17

## Figure 4





Figure 5

**U.S. Patent**    Nov. 5, 2013    Sheet 7 of 10    US 8,578,500 B2



**Figure 6**



**Figure 7**



**Audit Logs**

**Figure 8**

**Figure 9**



**Figure 10**

US 8,578,500 B2

1

# SYSTEM AND METHOD OF FRAUD AND MISUSE DETECTION

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation-in-part of U.S. patent application Ser. No. 11/420,645, filed on May 26, 2006, which claims priority to U.S. Provisional Application Ser. No. 60/685,655, filed May 31, 2005, the entire contents of which are incorporated herein by reference.

## FIELD OF THE INVENTION

The invention relates to a system and method of detecting fraud and/or misuse in a computer environment based on analyzing data such as in log files, or other similar records, including user identifier data. More particularly, the invention relates to a system and method of detecting fraud and/or misuse in a computer environment based on analyzing application layer data such as in log files, including user identifier data.

## BACKGROUND OF THE INVENTION

Conventional systems for detecting fraud or misuse by users are deficient at least because conventional systems have limited abilities to recognize log file formats and access the log files. This is especially difficult when a system accesses file logs that are generated by different applications, since each application may generate a different log file format.

Other problems with conventional systems include that users may have several different ways of accessing company (or other similar organizations) systems. For example, in many instances, users may use several different user-ids and passwords to access different applications or data stores of an organization. Fraud or misuse detection systems may have no way to correlate the activity of the user across the various applications. Likewise, in some instances, evaluating the behavior of a user based on one application may not provide enough information to discern a pattern of behavior that may be indicative of fraud or misuse of a company's system or information.

Some of the prior art systems related to detecting fraud and misuse of a system are described in U.S. Pat. Nos. 5,557,742 (Method and System for Detecting Intrusion Into and Misuse of a Data Processing System), 6,347,374 (Event Detection), 6,405,318 (Intrusion Detection System), and 6,549,208 (Information Security Analysis System). Various other drawbacks exits with these systems and with other systems known in the art

## SUMMARY OF THE INVENTION

Various aspects of the invention overcome at least some of these and other drawbacks of existing systems. According to one embodiment, a system and method are provided for tracking a user across logs at an application layer of various applications that a user may access.

According to one embodiment, event log files may be accessed by a monitoring system, wherein the event log files are associated with known users of users whose identity the system can derive. The event logs may be compilations of recorded transactions and/or activities that are recorded by applications and access layer devices. According to one embodiment, the events contained in the event logs may be extracted by the monitoring system. The extracted events may

2

be normalized into records that are suitable for analysis, storage and/or reporting. The normalized events may be analyzed against fraud scenarios that are defined for a given environment. According to one embodiment, the events may be correlated to users of the systems and the event records may contain identifiers that correlate to known users.

According to one embodiment, the normalized and correlated events may be analyzed for user specific fraud monitoring scenarios that are modeled based on a user's specific identity or role/relationship with an organization.

According to one embodiment, a method of detecting fraud or misuse of data in a computer environment is provided. The method comprises generating a rule for monitoring at least one of transactions and activities that are associated with the data, with the rule comprising at least one criteria related to the at least one of the transactions and the activities that is indicative of fraud or misuse of the data; applying the rule to the at least one of the transactions and the activities to determine if an event has occurred, with the event occurring if the at least one criteria has been met; storing a hit if the event has occurred; providing notification if the event has occurred; and providing a compilation of hits related to the rule.

According to one embodiment, a system for detecting fraud or misuse of data in a computer environment is provided. The system comprises a user interface for selection of at least one criteria related to at least one of transactions and activities associated with the data that is indicative of fraud or misuse of the data and for selection of a schedule for application of a rule for monitoring the at least one of the transactions and the activities, and a microprocessor in communication with the user interface and having access to the transactions and the activities of the data. The microprocessor generates the rule based at least in part on the at least one criteria selected and applies the rule to the at least one of the transactions and the activities according to the schedule selected to determine if an event has occurred. The event occurs if the at least one criteria has been met. The microprocessor stores a hit if the event has occurred and provides notification if the event has occurred. The microprocessor generates a compilation of hits related to the rule.

According to one embodiment, a computer readable program embodies in an article of manufacture comprising computer readable program instructions for detecting fraud or misuse of data in a computer environment is provided. The program comprises program instructions for causing the computer to provide a selection of at least one criteria related to at least one of transactions and activities associated with the data that is indicative of fraud or misuse of the data, program instructions for causing the computer to generate a rule based at least in part on the at least one criteria for monitoring the at least one of the transactions and the activities; program instructions for causing the computer to provide a selection for a schedule for application of the rule to the at least one of the transactions and the activities; program instructions for causing the computer to apply the rule according to the schedule selected to the at least one of the transactions and the activities to determine if an event has occurred, with the event occurring if the at least one criteria has been met, program instructions for causing the computer to store a hit if the event has occurred; program instructions for causing the computer to provide notification if the event has occurred; and program instructions for causing the computer to provide a compilation of hits related to the rule.

The invention has numerous advantages over and avoids many drawbacks of prior systems. These and other objects, features and advantages of the invention will be apparent through the detailed description of the embodiments and the

US 8,578,500 B2

3

drawings attached thereto. It is also to be understood that both the foregoing general description and the following detailed description are exemplary and not destructive of the scope of the invention. Numerous other objects, features and advantages of the invention should now become apparent upon a reading of the following detailed description when taken in conjunction with the accompanying drawings, a brief description of which is included below.

## DESCRIPTION OF THE DRAWINGS

FIGS. 1A and 1B illustrate a flow chart of a process flow according to one embodiment of the invention.

FIG. 2 illustrates one process of correlating events to known users according to one embodiment of the invention.

FIG. 3 illustrates exemplary XML definitions according to one embodiment of the invention that may be used for event parsing.

FIG. 4 illustrates a flow diagram of fraud detection according to one embodiment of the invention.

FIG. 5 illustrates a general purpose computing system that is connected to a network that may be used to implement one or more aspects of the monitoring system.

FIG. 6 illustrates a flow diagram of fraud or misuse detection process according to another embodiment of the invention.

FIG. 7 illustrates a user interface for a system that utilizes the process of FIG. 6.

FIG. 8 illustrates a flow chart for detection of various fraud or misuse scenarios based upon audit logs in another embodiment of the invention.

FIG. 9 illustrates a flow chart for detection of various fraud or misuse scenarios based upon audit logs and select patient data in another embodiment of the invention.

FIG. 10 illustrates a flow chart for detection of various fraud or misuse scenarios based upon audit logs and select user data in another embodiment of the invention.

## DETAILED DESCRIPTION OF THE INVENTION

FIGS. 1A and 1B together form a flow chart that illustrate some of the processes in one embodiment of the invention. In step 100, event log files (hereafter event logs) are accessed by a monitoring system that is provided by the invention. According to one embodiment, event logs are data stores containing events, associated with known users, that are accessed by the system from servers and devices on a network. According to an alternative embodiment of the invention, event logs may include temporary storage devices. According to another embodiment, event logs may be sent to the monitoring system via protocols and message sets. Whether accessed on servers or received via messages, the monitoring system accesses event logs associated with known users or users whose identity the system can derive.

According to one embodiment, the event logs may be compilations of recorded transactions and/or activities that are recorded by applications and access layer devices. According to one embodiment, these may include servers and applications such as VPN devices, third party applications, in-house applications, web servers, single sign on servers, databases, e-mail servers, print servers, fax servers, phone systems and any other device or server that contains or generates event information based on a known user's use or interaction with an organization's information systems. The collection of data from the event logs is scheduled by the monitoring system to be conducted periodically or performed in real-time as the events are generated.

4

According to one embodiment, in operation 105, the events that are contained in the event logs may be extracted by the monitoring system using, for example, a parsing engine. According to one embodiment, the parsing engine may be an application that is configurable, for example, by using XML templates. According to one embodiment, the parsing engine maintains XML templates (as an example of standard format for a known event) of known event logs and events. The XML templates also may contain information that identifies correlations between events and event logs and may further contain information on what is to be extracted from the event for subsequent analysis, storage and reporting. For example, the XML template may contain the format of the data contained in an event log so that the data in the event log may be easily correlated to known fields based on the XML template information. One skilled in the art would recognize that XML templates are one embodiment of such a template and other similar templates or mapping techniques could also be used as would be recognized by those skilled in the art. For never previously encountered event data formats, the parsing engine may be configured via manual definition and manipulation of a default XML template to create a suitable XML template, or configured via a tool with a graphical user interface to define the event formed as would be within the abilities of one skilled in the art.

According to one embodiment, in operation 110, the extracted events may be normalized (using, for example, the above described templates) into records that are suitable for analysis, storage and reporting. As part of the normalization process, an event source identifier (or event log identifier), date/time, source network address, destination network address, text associated with the event, and transaction code may be placed into the record. Based on the source identifier, additional information may be stored in the record that may not be part of a standard normalized record. For example, the record may include information correlating the events to the event source identifiers. One skilled in the art would recognize that the fields listed here are exemplary only and those skilled in the art would recognize various alternatives and modifications all of which are considered as a part of the invention.

According to one embodiment, in operation 115, the normalized events may be analyzed against fraud scenarios that are defined for a given organizational environment. Examples of such analysis include monitoring for access to a specific type of record in a healthcare financial service or mortgage environment, or monitoring for a volume of transactions over a specified time period. Alerting and off-line reports may be generated by the system. This stage of analysis is characterized by analyzing for scenarios that benefit from being detected rapidly. The analysis of fraud scenarios is discussed in greater detail further herein.

According to one embodiment, in operation 120, events may be correlated to users of the organization's systems. According to one embodiment, the event records may contain identifier(s) that correlate to known users. The listing of identifiers that identify a user may be sorted or accessible in a data repository 122, as will be discussed in further detail further herein. These correlation identifiers (found in the event records) may include e-mail address, userid(s), database ids, phone number, session id, TCP/IP address, MAC address, single sign on id, or any other id (identifier) that may correlate uniquely to users in a given organization's environment. According to one embodiment, these identifiers may be placed into the normalized record, such that the normalized records are associated with known users. Using the identifier, the monitoring system may correlate the normalized events

US 8,578,500 B2

5

6

using a database, directory or general repository 122 of known users. According to one embodiment, events that can not be matched against known users (for example, users that cannot be identified based on the known users in the repository 122) may be maintained in a separate records list. According to another embodiment, attempts to match the records to known users may be performed in an off-line process which may be performed later in time or which may be initiated in near real-time by the monitoring system sending a message to initiate the matching of the unknown record. According to one embodiment, the monitoring system is capable of maintaining its own user repository 122. According to another embodiment, the monitoring system is capable of interfacing with an identity management repository, a single sign on repository, a human resource repository, a ERP or any other repository of known users. Alternatively, the monitoring system may use a combined approach in which it first checks it own repository 122 before interfacing the other repositories of user information in an organization.

According to one embodiment, in operation 125, the normalized and correlated events may be analyzed using, for example, rules, algorithms, database queries, or other methods, for user specific fraud monitoring scenarios that are modeled based on a user'specific identity or role relationship with an organization. According to one embodiment, the fraud scenarios may be modeled and stored in XML templates. For example, monitoring system may include a template that is matched to determine whether a fraud or misuse scenario has arisen. Examples of fraudulent and misuse scenarios are discussed further herein.

According to one embodiment, in operation 132, the normalized and correlated events may be stored in a database 132 for subsequent analysis and reporting. According to one embodiment, events that are non-correlated with users may be maintained in a separate records list and attempts to match the records to known users may be performed in an off-line process.

According to one embodiment, in operation 135, the monitoring system may analyze the off-line database of normalized and correlated events 132 for fraud scenarios that can not be detected in real time due to data, time or performance limitations. The monitoring system may produce alerts 137 if its off line analysis uncovers fraudulent scenarios. These alerts may be in the form of a report or message, which alerts a responsible person to investigate the fraud or misuse scenarios. According to another embodiment, the monitoring system my initiate preventive action, for example, by suspending the access of a known user whose activities have triggered the alert. According to another embodiment, in operation 140, the system may produce generalized security reporting based on transactions and access by authenticated users. Such reports may be used to track the security of an organization's systems or may be used for subsequent investigation, once a fraud or misuse scenario has been uncovered.

The following description provides specific embodiments for some of the operations discussed above. While specific embodiments of the invention are discussed herein and are illustrated in the drawings appended hereto, the invention encompasses a broader spectrum than the specific subject matter described and illustrated. As would be appreciated by those skilled in the art, the embodiments described herein provide but a few examples of the broad scope of the invention. Thee is no intention to limit the scope of the invention only to the embodiments described herein.

1. Accessing Events. According to one embodiment, the monitoring system is flexible in its ability to read events. According to one embodiment, an application layer protocol

such as Simple Network Management Protocol (SNMP) may be used to facilitate the exchange of management information between network devices. The monitoring system simply needs programmatic input (or read) access to a given event source such as a log file. In the case of a log file, the log file may be accessible via a local hard drive, a network hard drive, and/or may be transferred locally via a file transfer protocol such as ftp. According to one embodiment, the monitoring system is also flexible enough to read from a local or remote database via protocols, such as ODBC, in order to access relevant events. Alternatively, a log file may be generated through the systematic extraction from one or more databases, and the generated log file(s) then transported via ftp to the local drive of the monitoring system. According to another embodiment, the monitoring system may provide a web service interface in order to receive events using a message protocol, such as Simple Object Access Protocol (SOAP). As previously stated, the monitoring system generally is flexible and uses programmatic (read) access to event sources.

2. Event Contents and Format. According to one embodiment, while the monitoring system is capable of processing any log event, it has the ability to process events that were directly or indirectly generated by known users (known, for example, to an organization) and then correlate those events to the known users. For user associated events, one general formed of the event data that is tracked is outlined below. Of course, it should be recognized that this format is exemplary only and those skilled in the art would recognize various modifications and alternatives all of which are considered at a part of the present invention. One general format may include [Date and Time Stamp] [User identifier] [Transaction Type ] [Event Text] [Request Address] [Target Address] [Status Code] [Other Data]. Other formats are contemplated.

As should be recognized by one skilled in the art, the number of lines per event, field order, delimiters, field format, etc. may vary between applications, access servers, databases, etc. The monitoring system is sufficiently configurable to handle various events. The "User identifier" field may be a user-id, an e-main address, a phone number, a database-id, a single sign on id, a TCP/IP address, a MAC address, a session id or any other identifier that ties the event to a known user. The applicability of the identifier may be dependent on the organization's environment, including user-id policies, application environments, network layouts, etc. The monitoring system is sufficiently configurable to allow for these variables in correlating the events to known users.

3. Event Definitions. According to one embodiment, the monitoring system may be flexible in its ability to process the above described events. According to one embodiment, the system may include a XML based description language that is used to specify the variables of a given event type such as fields, field order, field delimiters number of lines per event, number of characters, field type and spoken language type. Multiple event types in a given event source (such as a log file) can also be similarly described. According to one embodiment, the definition of event types may be maintained in a directory that is known to the monitoring system so that they may be used whenever a given event type (which has a definition in the directory) is processed.

4. System Database Schemas. According to one embodiment, the monitoring system may maintain a set of schemas that correspond to the event types being processed. These schemas may be used to generate database tables. For example, "http common log format" has a pre-defined schema that the monitoring system maintains and can generally re-use whenever the events of a "http common log format" type are processed. According to another embodiment,

US 8,578,500 B2

7

the monitoring system may provide the ability to use a schema that associates fields that are unique to a specific event type to the storage format of an event. In other words, the system may be sufficiently configurable to handle event fields that are not part of a standard format as described above. For example, program logic based on keywords or certain alphanumeric sequences may be used to identify fields in an event data record and may correlate them to the standardized storage format of the normalized records.

According to one embodiment, the monitoring system may normalized events by mapping as many fields available as described above to the schema and table defined herein as well as mapping the event specific fields to the table and field as described in the event type's specific schema. According to another embodiment, the monitoring system may generate a unique identifier for every event processed and stored in the system's database(s), which may be used for subsequent indexing, correlation and reporting. According to one embodiment, suitable indexed fields may be part of the schema definition that allows for increased efficiency in accessing the stored data, generating reports and in processing events. The normalized event generally may contain the same data as contained in an event record, but it may be formatted and indexed for a database.

According to one embodiment, the monitoring system may maintain tables (in a database 132) that correspond to known users and associated identifiers for an organization. According to one embodiment, the monitoring system may be sufficiently flexible to leverage existing identity management systems for the maintenance of the users and identifiers. These systems may include directories such as Active Directory or Identity Management systems from venders such as Computer Associates, BMC, Sun, IBM, Novell. Generally, the system is flexible enough to leverage existing identity sources of all kinds or to maintain the identifies itself in a repository.

5. Known User Correlation. According to one embodiment, the monitoring system may be flexible in that, depending on the processing environment and application of the system, it may correlate events to known users in real-time as the events are processed. According to another embodiment, the system may correlate the events to known users during off-line processing. In both cases, the result is that events processed by the system are correlated to the known users of an organization and used for security reporting, fraud detection, monitoring, etc., as discussed herein.

According to one embodiment of the invention. FIG. 2 illustrates a diagram of a process for correlating events 210 to records of known users 205. The monitoring system may to produce the normalized event 210 by the general process outlined earlier herein. According to one embodiment, the normalized event 210 may contain one or more User identifier (s), examples of which include e-main address, userid(s), database ids, phone number, TCP/IP address, MAC address, single sign on id, session id or any other id that may correlate uniquely to a user given an organization's environment.

According to one embodiment, the system may access a directory, database or other repository of users 122 and associated identifiers, examples of which are shown in the records of known users 205. Therefore, as shown in FIG. 2, particular users may be associated with a wide variety of identifiers. Some of these identifiers may be maintained on a permanent base while other identifiers, such as session ids, may only be maintained for a short duration, while a particular session of the user is current or has been recently created. Likewise, different variants of a particular type of identifier may also be

8

maintained, for example, if a user has multiple e-mail addresses or multiple telephone numbers, all of these may be stored in user repository 122.

According to one embodiment of the invention, the monitoring system may correlate an event 210 to records of a known users 205 based on matching identifier(s). According to one embodiment of the invention, event 210 and user record 205 may be linked together in a repository 132 that contains normalized and correlated events. Session ids, and similar temporary identifiers may be captured from event records and maintained so that events 210 may be correlated to a record of known users 205 even though the event 210 may not have an identifier that directly links the event 210 to the record of known users 205. Such temporary identifiers may be maintained in the user repository 122 or as a record in some other repository which may be linked back to the known user's record in the user repository 122. At some point in this flow, the session id (as an example of a temporary id) should have been linked to the user within some log event. For example, a VPN typically generates a session id in association with a user login event, then subsequently only "logs" session id in events associated with that user. However, the monitoring system may track the session id based on the initial user login event so that activities of the user, identified only by the session id in event logs, can also be tracked back to the specific known user.

According to another embodiment of the invention, events for which there are no correlating user records may be stored in the database under special tables that allow reporting and additional processing.

According to one embodiment of the invention. FIG. 3 provides exemplary XML definitions 301 that may be used for event parsing.

According to one embodiment of the invention, fraud and/ or misuse detection may be performed through analysis of uncorrelated events. Some fraud and misuse scenarios may be detected prior to the correlation of an event to a user. This enables the monitoring system to monitor resources of an organization and generally detect behaviors that are considered high risk, before a particular user has been identified as suspicious. For example, the monitoring system may generate an alert and alert record using any of the following techniques:

When any user, or user in a particular category, performs a certain volume of transactions or activities over a specified time interval;

When any use, or user in a particular category, performs a pre-defined sequence of transactions or activities;

When any user, or user in a particular category, accesses resources outside of pre-defined hours of the day;

When any user, or user in a particular category, changes or accesses a pre-identified resource such as a database field, file, application field; and/or

When any user, or user in a particular category, changes or accesses resources associated with a pre-identified entity such as records associated with a famous person who checked into a hospital or records that correspond to particular customers or partner.

According to another embodiment of the invention, fraud and/or misuse detection may be performed through analysis correlated events. Some fraud and misuse scenarios may be detected when events have been correlated to users. For example, the monitoring system may generate an alert and generate an alert record using any of the following techniques:

When any user carries out activities or transactions that are outside of pre-defined characteristics of that their rela-

27

US 8,578,500 B2

9

tionship to the organization (job function, supplier relationship, customer relationship, etc.).

When a user carries out activities or transactions that are inconsistent with the historically established behavior of that user (or a category of users to which the user belongs);

When a pre-identified user performs pre-defined activities, transactions or gains access to system;

When a user accesses resources from an address (TCP/IP, MAC, domain, other) that is inconsistent with the past accesses; and/or

When a user conducts activities or transactions that link the user to previously established auspicious users.

Examples of the Fraudulent of Business Information Systems

The fraudulent use of business information systems may take many forms, may involve variously sophisticated participants and techniques. According to one embodiment, the monitoring system may be applied to specific forms of fraud or may be used as a more general platform against more sophisticated forms of fraud. According to one embodiment, the monitoring system may perform monitoring, reporting, and/or incident research relating to fraud conducted in conjunction with known users (or user identifiers) of an organization. These fraudulent scenarios may go undetected by using the current art of firewall, intrusion detection and prevention, authentication/authorization techniques. It should be noted that these scenarios are exemplary only and one skilled in the art would recognize various alternatives and modifications all of which are considered as a part of the invention.

1. Sale of Customer Records. For many industries, knowledge of customers represents lucrative information. Long-term healthcare, mortgage, high value financial services are all example industries in which employees, partners, suppliers and other known entities may gain access to applications, databases, etc. via known user ids. Unscrupulous users may sell this information to competitors or other parties. According to one embodiment of the invention, the monitoring system may track which users are accessing which customer data to determine in advances if any misuse situation arises, for example, if a sales person is accessing information unrelated to any of his sales clients.

2. Unauthorized Disclosure to Protected Health Information. Within the healthcare field, access to Protected Health Information (PHI) is protected by law. Persons with general access to systems which have access to PHI, may act in collaboration with a third party to obtain PHI about a neighbor, a relative, a coworker, a famous person or a person of power in order to blackmail the victim or to view confidential information that is protected by law. Medicare fraud is also common practice and may include a ring of conspirators that act together to submit false or inflated claims. This scheme may require known/trusted users to falsify the systems within a care provider. According to one embodiment of the invention, the monitoring system may closely track which user is accessing data about a famous patient or track whether a group of users are accessing relevant data about one or more patients in such a manner that the combined data accessed may be misused.

3. Changing the Ship-to Address on an Order. Organizations that process orders electronically may have the "ship-to" address changed by an existing user, such as an employee. In this case, the employee may change the address to a destination where the employee may capture the order and sells the order on the open market. Typically, this act of fraud goes undetected until the original purchaser refuses to pay an invoice or complains that the order never arrived. According to one embodiment, the monitoring system may track which

10

user's are changing the ship-to address or if a user is changing ship-to addresses on a regular basis. Correlating the events around the transaction takes many man hours using the current state of the art.

4. Departing Employee Capturing the Customer Database. Departing sales persons are well-known for obtaining an electronic or printed copy of the customer database and prospect pipeline. They may use this data in a new position which may be with a competitive firm. According to one embodiment of the invention, the system may provide reporting and general detection capabilities and may correlate application and database activity to the user in question for review. According to one embodiment of the invention, the monitoring system may track to are if a sales person is accessing a relatively large number of sales records or if a sales person is accessing the records of customers with whom the sales person has no relationship.

5. Exploiting Weak Authentication via the Corporate Extranet or VPN. Corporate Extranets and VPN's are most typically authenticated via userid and password. As a partner to the company, a known user may have access to sensitive information such as pricing, inventory levels, inventory warehouse locations, promotions, etc. If the user leaves the "partner" firm and moves to a competitive firm, the user may still use the same userid and password to gain competitive access to the sensitive information. According to one embodiment of the invention, the monitoring system may associate the userid with a particular IP address (or domain) and raise an alert if the IP address or domain is that of competitor or an entity that is not a partner firm.

6. Non-repudiation for Bond Traders. Bond traders often speculatively purchase these securities in anticipation of market movements. In the event the markets take unexpected moves, the bond traders may deny the characteristics of their electronic order. According to one embodiment of the invention, characteristics and stages of an electronic transaction may be correlated to the known user (the trader) in order to negate any such fraudulent claim by the trader.

7. Financial Insider Trading Rings. Insider trading rings may comprise many collaborators using various electronic systems including applications, e-main, phone, and/or fax. According to one embodiment of the invention, the monitoring system may be used to detect suspicious behaviors or may be used to incident investigations to identify all conspirators. A typical scenarios is for one party to receive "inside information" from an outside source via some electronic means. The first source then collaborates with others to conduct trades that generate fraudulent profits based on the ill-gotten information. According to one embodiment of the invention, the monitoring system may detect such activities at a much earlier stage than might be possible using conventional insider trading detection methods.

8. Web Services. Business information systems are often published as web services. While authentication and authorization standards are established, the same rogue users that plague traditional systems often take advantage of a published web service. According to one embodiment of the invention, the system may provide reporting and general detection capabilities and may correlate application and database activity to the user in question for review.

According to one embodiment of the invention, FIG. 4 illustrates operations in the use of the monitoring system to detect misuse based on the actions of a departing employee. According to one exemplary scenario, a sales person who is an employee of the Organization has accepted a comparable position with a competitive firm. The employee has not notified the Organization of their intent to leave and is continuing

US 8,578,500 B2

11

to work in a business as usual appearance. The employee has decided to accumulate as many information resources as possible that may help with new business at their next position.

1. Customer and Prospect Record Access. As part of their job, the Employee has access to detailed information on the Organization's customer and prospects. Customer and prospect records are maintained in a CRM (Customer Relationship Management) application, which is available through the Organization's VPN and Extranet. The CRM application has a privilege management system for limiting access to records to the "owner of the record" only. However, due to the collaborative nature of the sales and support process, this feature is rarely used, so that all employees have access to all records.

2. Remote Data Capture. Knowing specifics on customers and prospects who are actively engaged with the Organization would be valuable in saving time and generating new business at their next position. In operation 405, the Employee decides to access the CRM application through the corporate VPN and to capture prospects and customers of the Organization in operation 410. The Employee's work location is in a remote office, away from the Organization's headquarters, to the Employee is comfortably able to take an entire morning accessing the CRM system to electronically capture over 125 customer and prospect records. The electronically captured customer and prospect records are then forwarded to a personal "hotmail" e-main account. The Employee intended to access another 200 records at later times.

3. Detection. According to one embodiment of the invention, the monitoring system may be configured to monitor access to CRM, VPN and Internet proxy logs. The monitoring system may be configured to alert the security team in the event that more than 50 customer or prospect records are accessed in a specific (for example, four hour) time period. Thus, actions of the departing Employee may trigger a security alert in operation 415.

4. Investigation. According to one embodiment of the invention, in operations 420 and 425, the monitoring system may facilitate a forensic investigation once an alert has been generated. Once the security team had been alerted of a potential incident, they can run a report from the monitoring system which has captured events from the VPN, CRM and Internet proxy from the last 30 days. According to one embodiment, from this report, the security team may be able to determine that the employee had remotely accessed 125 customer and prospect records through the corporate VPN and that the employee had also sent a series of e-mails to a hotmail account during the same time period. According to one embodiment, this analysis may be performed using automated roles to determine that a fraud/misuse situation has been detected.

According to one embodiment of the invention, the security team can then forward this information or an automated alert can be forwarded to the Human Resources department of the Organization. In operation 430, the Organization may then be able to confront the Employee with the facts, limiting future damages and enable the Organization to work through the Employee Separation in an informed manner. Alternatively, the monitoring system may automatically disable or suspend the access of the Employee to the Organization's system, so that further damage can be prevented before the situation with the Employee can be further evaluated.

According to one embodiment of the invention, FIG. 5 illustrates the components of a computing system connected through a general purpose electronic network 10, such as a computer network. The computer network 10 may be a virtual private network or a public network, such as the Internet. As illustrated in FIG. 5, the computer system 12 may include a

12

central processing unit (CPU) 14 that is connected to a system memory 18. System memory 18 may include an operating system 16, a BIOS driver 22, and application programs 20. In addition, computer system 12 may include input devices 24, such as a mouse or a keyboard 32, and output devices such as a printer 30 and a display monitor 28, and a permanent data store, such as a database 21. Computer system 12 may include a communications interface 26, such as an Ethernet card, to communicate to the electronic network 10. Other computer systems 13 and 13A may also be connected to the electronic network 10, which can be implemented as a Wide Area Network (WAN) or as an inter-network, such as the Internet.

According to one embodiment, computer system 12 may include a monitoring server 50 that implements the monitoring system or its parts discussed herein, including programmed code that implements the logic and modules discussed herein with respect to FIGS. 1-4. One skilled in the art would recognize that such a computing system may be logically configured and programmed to perform the processes discussed herein with respect to FIGS. 1-4. It should be appreciated that many other similar configurations are within the abilities of one skilled in the art and it is contemplated that all of these configurations could be used with the methods and systems of the invention. Furthermore, it should be appreciated that it is within the abilities of one skilled in the art to program and configure a networked computer system to implement the method steps of certain embodiments of the invention, discussed herein.

According to one embodiment, monitoring server 50 may include a user identifier module 51 that provides data corresponding to computer users, a modeled data providing module 52 that provides fraud detection information and misuse detection information, a data capturing module 53 that provides application layer data and data corresponding to transactions and activities that are associated with computer users, a parsing engine 54 that extracts application layer data and data corresponding to transactions and activities that are associated with the computer users, a normalizing engine 55 that normalizes the data extracted by the parsing engine, a correlating module 56 that correlates the normalized at, an analyzing module 57 that analyzes the correlated information and the modeled data, a determining module 58 that determines whether the correlated information corresponds to at least one of the fraud detection information and misuse detection information, a user specific analyzing module 59 that analyzes the correlated information for user specific fraud detection information based on the computer users identity, a pre-defined role associated with each computer user, and/or a pre-defined relationship that is defined for the computer users, and an alert generating module 60 that generates alerts. It should be readily appreciated that a greater number of lesser number of modules may be used. One skilled in the art will readily appreciate that the invention may be implemented using individual modules, a single module that incorporates the features of two or more separately described modules, individual software programs, and/or a single software program.

According to one embodiment of the invention, FIG. 6 illustrates a rule engine or process 600 that enables automatic detection of incidents which may be related to fraud or misuse of data, such as violations of the Health Insurance Portability and Accountability Act (HIPAA), identity theft and medical identity theft. The rule can monitor transactions and/or activities that are associated with the data, for example, accessing of the data by a user or non-user of the system storing the data. Process 600 can utilize one or more of the components described above with respect to system 12, including the various modules for capturing, parsing, correlating, normal-

US 8,578,500 B2

13

izing, analyzing and determining incidents that arise from the transactions and/or activities associated with the data of the computer environment, including the one or more databases having the data. The rule engine 600 is not intended to be limited to any particular type of computer environment or data or any particular type of fraud or misuse of the data. However, the type of data and type of fraud or misuse of the data can be a basis, at least in part, for one or more criteria of a rule for monitoring the transactions and/or activities associated with the data or computer environment.

In step 605, a rule is created by the user and/or a third party, such as a consultant with particular knowledge as to fraud or misuse of the particular type of data. The rule can include algorithms, database queries and/or data analysis methods to define and/or detect fraud incidents and misuse incidents. Various criteria can be used for generating or creating the rule. The criteria can be related to the transactions and/or activities that are indicative of fraud or misuse of the data. For example, process 600 can create or generate a rule based on one or more of the following parameters:

Timeframe criteria can be utilized, such as a date range or a user-friendly time concept, e.g., yesterday, last month, last quarter.

Volume threshold criteria can be utilized based on the number of events found. The volume threshold criteria could be used in conjunction with the timeframe criteria.

Field value matching criteria can be utilized which allows a user to select an event source, and then allows a user to select a field and a value for that field.

Categorized field value matching criteria can be utilized which allows a user to choose a category and a pattern to match.

Common user name matching criteria can be utilized which allows a user to select a common user name to be searched across all supported applications. The common user name matching criteria can be implemented where the user data for each application is imported.

Step 605 also allows a user to designate the criteria related to the notice or alert that can be used when a rule is triggered. In one embodiment, an email address of the entity to be notified of the triggering of the rule can be designated. Process 600 can use the email address of rule creator as a default for the alert. In one embodiment, the type of notice can be designated such as text to be sent in an email so the user will know which rule was tripped and any specific information that can be provided.

The scope of the rule can include a single event source, such as finding matches in a single system. For example, single event source rules can accept pattern matches with timeframe and/or volume threshold criteria. As another example, a rule could determine when access has been gained to a pre-determined number of medical records ever a pre-determine time interval. Such behavior can be indicative of medical identity theft. The scope of the rule can include multiple event source rules, such as finding matches across multiple systems. For example, multiple event source rules could monitor for common user names or access to particular data categories.

In step 610, it can be determined whether real-time incident detection is being implemented by process 600. Real-time incident detection processes the rule as each event is read and before insertion into a database. Process 600 can apply real-time incident detection to some, most or all of the rules that have been created in step 600.

In step 615, any rule that is not subject to real-time incident detection can be scheduled for processing. The schedule can be time-based and/or can utilize other factors for determining

14

the schedule, such as system activity. The particular schedule can be related to the criteria of the rule. For example, a rule that monitors access to a pre-determined volume of medical records over a pre-determined time period may be scheduled to be processed at intervals of the pre-determined time period. An example of an application that can be used to schedule the rule is Quartz.

The present disclosure also contemplates adjustable or dynamic scheduling of the rule. A user can designate one or more criteria for scheduling the rule and the schedule can be built and thereafter automatically adjusted based upon the one or more criteria. For example, a time interval between processing of the same rule can be adjusted based upon such factors as system activity or the amount of accessible data.

In step 620, the rule can be implemented or processed. Any rule that finds one or more matches can create a database entry, such as in a database of system 12 described above with respect to FIG. 5, indicating a hit or triggering of the rule. The hit also can cause the notice or alert to be generated and sent to the designated recipient as in step 625.

Based upon the receipt of the alert or notice, a user can access system 12 for additional information pertaining to the rule or plurality of rules that has been triggered as in step 630. The additional information can provide the specific time of triggering the rule, as well as all other times the rule was triggered. A specific link can be provided in the notice or alert so that the user is brought directly to the relevant information pertaining to the hit when accessing system 12.

In one embodiment of the invention, FIG. 7 illustrates a user interface 700 for the rules process 600. A rule management page or window 705 can indicate to a user all of the defined rules. The rule management page 705 can also be used by the user for creating, modifying or deleting rules. A rule definition page or a window 710 can also be used for inputting information to define a new rule. A rule scheduling management page or window 715 can indicate to a user all of the schedules of the rules. The rule scheduling management page 715 can also be used to create new schedules, modify existing schedules, and/or delete schedules. A rule schedule definition page or window 720 can be used to define the schedule for the rule to run.

A rule hit management page or window 725 can indicate to a user all rules that have had matches and the number of matches per rule. A rule hit summary screen or window 730 can indicate to a user all the entries in the database for hits for a particular rule. The rule hit summary screen 730 can show the date that the rule was triggered and the actual events that caused the rule to trigger. A rule hit event screen or window 735 can indicate to a user the one or more events that caused the rule to trigger. Manipulation between the pages or windows and between information on those pages or windows can occur by various techniques including drill-down menus and new windows. The present disclosure contemplates use of the same window for each of the functions described above.

Referring to FIG. 8, the system 12 or a module thereof can be used in combination with audit logs 1100 for detection of various fraud or misuse scenarios. For example, the audit logs 1100 can be analyzed based upon various criteria is described above to detect employee self-examination, family member snooping, VIP snooping, snooping on co-workers who are patients, snooping whole other family (neighbors, etc). The criteria can include a high volume of billing/contact modifications, a high volume of downloading/printing functions, "Break-the-glass" functions, high activity levels for patients or users in a timeframe and/or unusual login activity. One of

US 8,578,500 B2

15

ordinary skill in the art can use other criteria and other combinations of criteria for detecting fraud and misuse based upon the audit logs.

Referring to FIG. 9, the system 12 or a module thereof can be used in combination with audit logs 1100 and select patient data 1200 for detection of various fraud or misuse scenarios. For example, the audit logs 1100 and select patient data 1200 can be analyzed based upon criteria including accessing patients who were discharged over a year ago or other specified time period or a patient who normally goes to the doctor once a year and suddenly goes 25 times in a year or some other unusual number of times.

Referring to FIG. 10, the system 12 or a module thereof can be used in combination with audit logs 1100 and select user data 1300 for detection of various fraud or misuse scenarios. For example, the audit logs 1100 and select user data 1300 can be analyzed based upon criteria including remote physician staff accessing patients that aren't under their physician's care, accessing patients outside of their normal work area, accessing patients outside of their normal work shift or non-payroll user accessing payroll functions. Other criteria can also be used including patients with highest activity levels in a timeframe, users with highest activity levels in a timeframe, users with unusually long login sessions, users with high numbers of login failures and specific functions like blood type modifications.

As noted above, embodiments within the scope of the invention include program products comprising computer-readable media for carrying or having computer-executable instructions or data structures stored thereon. Such computer-readable media can be any available media which can be accessed by a general purpose or special purpose computer. By way of example, such computer-readable media can comprise RAM, ROM, EPROM, EEPROM, CD-ROM or other optical disk storage, magnetic disk storage or other magnetic storage devices, or any other medium that can be used to carry or store desired program code in the form of computer-executable instructions or data structures and which can be accessed by a general purpose or special purpose computer. When information is transferred or provided over a network or another communications connection (either hardwired, wireless, or a combination of hardwired or wireless) to a computer, the computer properly views the connection as a computer-readable medium. Thus, any such connection may be properly termed a computer-readable medium. Combinations of the above are also be included within the scope of computer-readable media. Computer-executable instructions may include, for example, instructions and data which cause a general purpose computer, special purpose computer, or special purpose processing device to perform a certain function or group of functions.

The invention is described in the general context of operational steps which may be implemented in one embodiment by a program product including computer-executable instructions, such as program code, executed by computers in networked environments. Generally, program code may include routines, programs, objects, components, data structures, etc. that perform particular tasks or implement particular abstract data types. Computer-executable instructions, associated data structures, and program modules represent examples of program code for executing steps of the methods disclosed herein. The particular sequence of such executable instructions or associated data structures represent examples of corresponding acts for implementing the functions described in such steps.

The present invention in some embodiments, may be operated in a networked environment using logical connections to

16

one or more remote computers having processors. Logical connections may include a local area network (LAN) and a wide area network (WAN) that are presented here by way of example and not limitation. Such networking environments are commonplace in office-wide or enterprise-wide computer networks, intranets and the Internet. Those skilled in the art will appreciate that such network computing environments will typically encompass many types of computer system configurations, including personal computers, hand-held devices, multi-processor systems, microprocessor-based or programmable consumer electronics, network PCs, mini-computers, mainframe computers, and the like. The invention may also be practiced in distributed computing environments where tasks are performed by local and remote processing devices that are linked (either by hardwired links, wireless links, or by a communication of hardwired or wireless links) through a communications network. In a distributed computing environment, program modules may be located in both local and remote memory storage devices.

Other embodiments of the invention will be apparent to those skilled in the art from a consideration of the specification and the practice of the invention disclosed herein. It is intended that the specification be considered as exemplary only, with the true scope and spirit of the invention also being indicated by the disclosure herein and equivalents thereof.

What is claimed is:

1. A method of detecting improper access of a patient's protected health information (PHI) in a computer environment, the method comprising:

generating a rule for monitoring audit log data representing at least one of transactions or activities that are executed in the computer environment, which are associated with the patient's PHI, the rule comprising at least one criterion related to accesses in excess of a specific volume, accesses during a pre-determined time interval, accesses by a specific user, that is indicative of improper access of the patient's PHI by an authorized user wherein the improper access is an indication of potential snooping or identity theft of the patient's PHI, the authorized user having a pre-defined role comprising authorized computer access to the patient's PHI;

applying the rule to the audit log data to determine if an event has occurred, the event occurring if the at least one criterion has been met;

storing, in a memory, a bit if the event has occurred; and

providing notification if the event has occurred.

2. The method of claim 1, further comprising:

normalizing the audit log data to be correlated with known fields based on template information.

3. The method of claim 1, further comprising:

obtaining role information of the authorized user; and

wherein the generated rule is based on a user's specific role.

4. The method of claim 1, wherein application of the rule to the audit log data comprises determining a misuse of the patient's PHI by tracking access by the authorized user of patient's PHI of another person.

5. The method of claim 4, wherein the access tracked comprises access by the authorized user in excess of a specific volume of the patient's PHI of the another person.

6. The method of claim 5, wherein the access tracked further comprises access over a predetermined time interval.

7. The method of claim 4, wherein the criterion related to the audit log data comprises a relation between the authorized user and the another person sufficient to detect at least one of family member snooping, VIP snooping, co-worker snooping, whole other family snooping.

US 8,578,500 B2

**17**

8. The method of claim 1, further comprising:

accessing at least one of select patient's PHI or select user data; and

applying the rule further comprises applying the rule to at least one of the select patient's PHI or the select user data.

9. The method of claim 8, wherein applying the rule to the audit log data and the select patient's PHI comprises analysis of criteria including access by the authorized user of patient's PHI of the another person who was discharged from a medical facility more than a specified time period in the past.

10. The method of claim 8, wherein applying the rule to the audit log data and the select user data comprises tracking access by the authorized user of patient's PHI of the another person, where the authorized user is a remote physician staff member and the another person is a patient not under the care of the physician for whom the authorized user is a staff member.

11. The method of claim 8, wherein applying the rule to the audit log data and the select user data comprises tracking access by the authorized user of patient's PHI of the another person during a timeframe outside the normal work shift of the authorized user.

12. A system for detecting improper access of a patient's protected health information (PHI) in a health-care system computer environment, the system comprising:

a user interface for selection of at least one criterion related to accesses in excess of a specific volume, accesses during a pre-determined time interval, accesses by a specific user, representing at least one of transactions or activities associated with the patient's PHI that is indicative of improper access of the patient's PHI within the health-care system computer environment by an authorized user wherein the improper access is an indication of potential snooping or identity theft of the patient's PHI, the authorized user having a pre-defined role comprising authorized computer access to the patient's PHI, and for selection of a schedule for application of a rule for monitoring audit log data representing at least one of the transactions or the activities;

a microprocessor in communication with the user interface and having access to the audit log data representing the transactions or the activities of the patient's PHI, the microprocessor generating the rule based at least in part on the at least one criterion selected and applying the rule to the audit log data according to the schedule selected in order to determine if an event has occurred,

wherein the event occurs if the at least one criterion has been met,

wherein the microprocessor stores a hit if the event has occurred, and

**18**

wherein the microprocessor provides notification if the event has occurred.

13. The system of claim 12, wherein application of the rule to the audit log data comprises determining a misuse of the patient's PHI by tracking access by the authorized user of patient's PHI of another person.

14. A non-transitory computer-readable medium with computer-executable instructions embodied thereon for performing a method of detecting improper access of a patient's protected health information (PHI) in a health-care system computing environment, the method comprising:

providing a selection of a criterion related to accesses in excess of a specific volume, accesses during a pre-determined time interval, accesses by a specific user, representing at least one of transactions or activities associated with the patient's PHI within the health-care system computing environment, wherein the criterion is indicative of improper access of the patient's PHI by an authorized user wherein the improper access is an indication of potential snooping or identity theft of the patient's PHI, the authorized user having a pre-defined role comprising authorized computer access to the patient's PHI;

generating a rule based at least in part on the criterion for monitoring the at least one of the transactions or the activities;

providing a selection for a schedule for application of the rule to the at least one of the transactions or the activities;

applying the rule according to the schedule selected to the at least one of the transactions or the activities to determine if an event has occurred, the event occurring if the criterion has been met;

storing a hit if the event has occurred; and

providing notification if the event has occurred.

15. The non-transitory computer-readable medium of claim 14, wherein the providing the criterion is indicative of fraudulent claims filed by the authorized user of the health-care system computing environment with authorized access to the patient's PHI.

16. The non-transitory computer-readable medium of claim 14, wherein application of the rule to the audit log data comprises determining a misuse of the patient's PHI by tracking access by the authorized user of patient's PHI of another person.

17. The non-transitory computer-readable medium of claim 16, wherein the access tracked comprises access by the authorized user to a predetermined number of patient's PHI of the another person.

* * * * *

RIC

F T

ES C

RIDA 33602

L BUSINESS

UNITED STATES POSTAGE

PITNEY BOWES

02 1R
0002007033

$ 02.74⁰

OCT 15 2015
MAILED FROM ZIPCODE 33602



TO:



RECEIVED

OCT 2 2 2015

United States Court of Appeals
For The Federal Circuit

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

FAIRWARNING IP, LLC,

       **Plaintiff,**

v.                                           **Case No:  8:15-cv-100-T-23AEP**

CYNERGISTEK, INC.,

       **Defendant.**

---

## JUDGMENT IN A CIVIL CASE

**Decision by Court.**   This action came before the Court and a decision has been rendered.

    **IT IS ORDERED AND ADJUDGED** that Judgment is in favor of Defendant Cynergistek,

Inc., and against FairWarning IP, LLC.

                SHERYL L. LOESCH, CLERK

                s/E. Calderon, Deputy Clerk

38

# CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders**: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. V. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

    (b)  **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), Williams v. Bishop, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. Section 1292(a)**: Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5**: The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule**: Limited exceptions are discussed in cases including, but not limited to: Cohen V. Beneficial Indus. Loan Corp., 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F. 2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2.  **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

    (a)  **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD - no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)  **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)  **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)  **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)  **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.  **Format of the notice of appeal**: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4.  **Effect of a notice of appeal**: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).





TO:

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

Sam M. Gibbons U.S. Courthouse
Office of the Clerk
801 North Florida Avenue
Tampa, FL 33602
(813) 301-5400
www.flmd.uscourts.gov

**RECEIVED**

OCT 2 1 2015

United States Court of Appeals
For The Federal Circuit

Sheryl L. Loesch
Clerk

Keshia M. Jones
Tampa Division Manager

**DATE:** October 16, 2015

**TO:**   Clerk, U.S. Court of Appeals for the Federal Circuit

---

FAIRWARNING IP, LLC,

   Plaintiff,

v.                                          Case No: 8:15-cv-100-T-23AEP

CYNERGISTEK, INC.,

   Defendant.

---

**U.S.C.A. Case No.:**   ***USCA Case Number ***

Enclosed are documents and information relating to an appeal in the above-referenced action.  Please acknowledge receipt on the enclosed copy of this letter.

- Honorable Steven D. Merryday, Chief United States District Judge appealed from.

- Appeal filing fee was paid ($505.00, receipt # TPA-32774).

SHERYL L. LOESCH, CLERK

By:   s/E. Calderon, Deputy Clerk

```
MIME-Version:1.0
From:cmecf_flmd_notification@flmd.uscourts.gov
To:cmecf_flmd_notices@localhost.localdomain
Bcc:
--Case Participants: Sharona H. Sternberg (jcreedon@sunsteinlaw.com,
ssternberg@sunsteinlaw.com), Rachel Karen Pilloff (dsmith@ipfirm.com,
rpilloff@ipfirm.com), Michael S. Hooker (claudia.kitchell@phelps.com,
hookerm@phelps.com), Richard Edson Fee (agonzalez@feejeffries.com,
cnelson@feejeffries.com, cyant@feejeffries.com, rfee@feejeffries.com,
rfee@ipenforcementlaw.com), Kathleen M. Wade (agonzalez@feejeffries.com,
cnelson@feejeffries.com, kwade@feejeffries.com), Catherine Fly Yant
(admin@ipenforcementlaw.com, agonzalez@feejeffries.com, cnelson@feejeffries.com,
cyant@feejeffries.com, cyant@ipenforcementlaw.com), Jason Paul Stearns
(hackelta@phelps.com, stearnsj@phelps.com, tina.russell@phelps.com), Lisa M.
Tittemore (ltittemore@sunsteinlaw.com, mturner@sunsteinlaw.com), Brandon Scruggs
(bscruggs@sunsteinlaw.com, lerdos@sunsteinlaw.com), Sean Allen Passino
(dsmith@ipfirm.com, spassino@ipfirm.com), Magistrate Judge Anthony E. Porcelli
(chambers_flmd_porcelli@flmd.uscourts.gov), Judge Steven D. Merryday
(chambers_flmd_merryday@flmd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:<14076026@flmd.uscourts.gov>
Subject:Activity in Case 8:15-cv-00100-SDM-AEP FairWarning IP, LLC v. CynergisTek,
Inc. USCA Appeal Fees
Content-Type: text/html
```

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT
RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy
permits attorneys of record and parties in a case (including pro se litigants) to receive one free
electronic copy of all documents filed electronically, if receipt is required by law or directed by the
filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each
document during this first viewing. However, if the referenced document is a transcript, the free
copy and 30 page limit do not apply.

## U.S. District Court

### Middle District of Florida

### Notice of Electronic Filing

The following transaction was entered on 10/15/2015 at 9:24 AM EDT and filed on 10/15/2015
**Case Name:**    FairWarning IP, LLC v. CynergisTek, Inc.
**Case Number:**    8:15-cv-00100-SDM-AEP
**Filer:**
**WARNING: CASE CLOSED on 09/15/2015**
**Document Number:** No document attached

**Docket Text:**
**USCA appeal fees received $ 505 receipt number TPA032774 re [50] Notice of appeal
filed by FairWarning IP, LLC (AG)**

**UNITED STATES DISTRICT COURT**
MIDDLE DISTRICT OF FLORIDA
OFFICE OF THE CLERK
UNITED STATES COURTHOUSE
TAMPA, FLORIDA 33602

OFFICIAL BUSINESS



02 1R          $ 00.48⁵
0002007033    OCT 16  2015
MAILED FROM ZIP CODE 33602

FEDERAL CIRCUIT